```
              IN THE UNITED STATES DISTRICT COURT FOR
            THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                  *
CHRISTOPHER U. HALL
                                  *
     Plaintiff,                   *
v.                                *     CIVIL NO.: WDQ-04-02846

ROGER J. SULLIVAN, et al.

     Defendants.                  *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Christopher U. Hall has sued Roger J. Sullivan, Esq., DiPaula & Sullivan, LLC, Mark Devan, Esq., and Covahey, Boozer, Devan & Doore, LLC (the "Defendants"), for legal malpractice and breach of contract. Pending is Hall's objection to Magistrate Judge Paul Grimm's July 15, 2005 order. For the following reasons, Hall's objection will be overruled.

I. BACKGROUND

In 1998 Hall retained Defendants to represent him in the purchase of a Smoothie King franchise. Compl. ¶ 9. Acting on what he alleges were the Defendants recommendations, Hall formed Rybek Incorporated ("Rybek") to purchase the franchise, and appointed Ryan Beck to operate the franchise on his behalf. According to Hall, Defendants promised that the franchise agreement would be structured in such a way as to preserve his

1

legal interests in the franchise and allow him to become the franchisee of record if necessary.  *Id* at ¶¶ 9-14.

Hall contends that in the summer of 1998 Defendants prepared and reviewed the Smoothie King franchise agreement, but, *inter alia,* erroneously directed Smoothie King Franchises Incorporated ("Smoothie King Inc.") to award the franchise and the valuable Area Development Agreement (which provided exclusive development options) to Ryan Beck, not Rybek.  *Id* at ¶ 16.

In February 1999, the Hall/Beck franchise opened in Columbia, South Carolina.  *Id* at ¶ 18.  In the fall of 1999, Hall alleges that Sodexho USA ("Sodexho"), the University of South Carolina's ("USC") food service provider, contracted Rybek to open two Smoothie King franchises on the USC campus if USC renewed Sodexho's food service contract.  *Id* at ¶ 19.  Despite this agreement, Hall contends, Sodexho later entered into an agreement with Smoothie King Inc. by which Sodexho, not Rybek, would open the two on-campus franchises.[1]  Complaint, ¶ 21.

Having learned of the Sodexho-Smoothie King agreement, Hall and his attorneys sent a series of "cease and desist" letters to Sodexho and Smoothie King Inc. arguing that the USC campus was within the exclusive development territory of the Rybek franchise and that the opening of additional franchises would cause Rybek

---

[1] Ultimately, however, Sodexho chose not to open a Smoothie King franchise at USC.

2

significant financial harm.  *Id* at ¶ 25.  In a May 5, 2003 letter from Hall to a Sodexho attorney, Hall threatened to sue Sodexho for $200 million and testify before Congress if Sodexho did not pay him $17 million.  Letter from Hall to Adrienne Sturges at Sodexho, dated May 5, 2003.  In other communications, Hall threatened to go to the Secretary of Defense, the President of the United States and the Washington Times with his claims against the company.  Sodexho's Motion to Quash, Ex. D.

In June 2002, Hall alleges that he became aware that he could not obtain control of the franchise without Smoothie King's approval and that such approval was not forthcoming.  Complaint, ¶ 24.  Hall later learned that he could not assert franchisee rights and lacked standing to sue either Sodexho or Smoothie King.  Hall subsequently brought suit against the Defendants for legal malpractice and breach of contract claiming $17 million in damages.

In January 2005, Plaintiff subpoenaed Sodexho for information about, *inter alia,* Sodexho's food service operations at USC, Sodexho's bids for the USC food service contract, and any evidence of a nationwide agreement between Sodexho and Smoothie King.  Sodexho moved to quash the subpoena, arguing that Hall's request was overly broad and sought confidential commercial information.

In March 2005, Judge Grimm granted in part and denied in

part Sodexho's Motion to Quash and directed the parties to negotiate a protective order.  Sodexho's proposed protective order prohibited the disclosure of certain documents and permitted the company to designate sensitive documents "for attorney's eyes only."  Unwilling to agree to the terms of the protective order, Hall filed a Motion to Compel, arguing that "attorney's eyes only" designations are only appropriate in litigation between competitors and that Sodexho did not have the right to object to the Subpoena on grounds of relevance.

On July 15, 2005, Judge Grimm granted in part and denied in part Hall's motion, holding that: 1) the protective order could include an "attorney's/expert's eyes only" provision; 2) Hall's request for documents relating to any nationwide agreement between Sodexho and Smoothie King was denied; 3) Hall's request for documents concerning the overall operation of the food court area of USC's Strom Thurmond Wellness Center was denied; and 4) Hall must narrow his request for information about Sodexho's food service operations at USC to documents that are necessary for Hall and his experts to calculate Hall's damages.

Hall has objected to Judge Grimm's order, arguing that the "attorney's/expert's eyes only" provision of the protective order is unnecessary and overly broad and that documents relating to the operations of the food court area at the Strom Thurmond Wellness Center and those concerning a nationwide agreement

4

between Sodexho and Smoothie King are relevant to Hall's claim.

II.   Analysis

Under Local Rule 301.5(a) a district court may reconsider, modify, or set aside any portion of a Magistrate Judge's order found to be clearly erroneous or contrary to law.  Local Rules 301.5(a); Federal Rule of Civil Procedure 72(a); *Buchanan v. Consolidated Stores Corp.*, 206 F.R.D. 123 (D.Md. 2002).

A.   Relevance Ruling

Rule 26(b)(1) allows discovery into matters relevant to the claim or defense of any party.  Federal Rule of Civil Procedure 26(b)(1).  Hall argues that information relating to a nationwide agreement between Sodexho and Smoothie King, and Sodexho's operations at the Strom Thurmond Wellness Center food court is relevant to Hall's claims against the Defendants.

Hall's complaint, however, seeks damages only for losses relating to Smoothie King franchises in Columbia, South Carolina. Therefore, information relating to any nationwide agreement between Sodexho and Smoothie King is irrelevant to the Complaint. Accordingly, Judge Grimm's decision that Hall's request was overbroad was neither clearly erroneous nor contrary to law.

Similarly, Hall's complaint alleges damages relating only to Smoothie King franchises.  Therefore, information regarding

5

Sodexho's other operations at the Strom Thurmond Wellness Center is likewise irrelevant. As a result, Judge Grimm's limitation of discovery to the operations of Sodexho's smoothie outlets at USC was justified.

B.  Protective Order

Rule 26(c) provides that a protective order may be imposed to limit disclosure of trade secrets or other confidential commercial information. Federal Rule of Civil Procedure 26(c). Hall argues that the "attorney's/expert's eyes only" provision is unnecessary, and provides Sodexho excessive discretion in identifying confidential documents.

In a May 5, 2003 letter to Sodexho, Hall threatened to bring "a $200 million dollar lawsuit" and to "testify against Sodexho before the United States Congress" if his claim is not settled for $17 million. Letter from Hall to Adrienne Sturges at Sodexho, dated May 5, 2003. According to Sodexho, Hall later threatened to contact members of Congress, the Secretary of Defense, the President of the United States and the Washington Times unless Sodexho settled the case. Sodexho's Motion to Quash, Ex. D.

As it is clear that Hall sought to coerce a settlement from Sodexho, and given his threats to testify against Sodexho before Congress, the Secretary of Defense, the President and the media,

6

Judge Grimm's determination that Hall posed a threat of disclosure was not clearly erroneous.  Although Hall argues that "attorney's eyes only" provisions are generally used to prevent competitors from gaining access to confidential commercial information, Hall has made no argument, and offered no caselaw to suggest that the provision is contrary to law.  Accordingly, Hall's objection to the protective order will be overruled.

III.  Conclusion

As Hall has failed to show that any part of Judge Grimm's July 15, 2005 order was clearly erroneous or contrary to law, his objection to the order will be overruled.


January 17, 2006                    /s/
Date                         William D. Quarles, Jr.
                             United States District Judge