```
          IN THE UNITED STATES DISTRICT COURT FOR
         THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                *
CHRISTOPHER U. HALL
                                *
     Plaintiff,                 *
v.                                       CIVIL NO.: WDQ-04-2846
                                *
ROGER J. SULLIVAN, et al.
                                *
     Defendants.
                                *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Christopher U. Hall has sued Roger J. Sullivan, Esq., Mark Devan, Esq., DiPaula & Sullivan, LLC ("D&S"), and Covahey, Boozer, Devan & Doore, LLC ("CBDD"), for legal malpractice and breach of contract.  Pending are Devan's and CBDD's motion for summary judgment and Sullivan's and D&S's motion for partial summary judgment.  For the following reasons the motions will be denied.

I.  BACKGROUND

In 1998, Hall retained Sullivan at CBDD[1] to represent him in the purchase of Smoothie King franchises in Massachusetts, North Carolina and South Carolina.  Compl. ¶ 9.  For tax and liability purposes, Sullivan recommended that Hall form a corporation to

---

[1] Sullivan left CBDD in the summer of 2000 to open DiPaula & Sullivan, LLC, but continued to represent Hall until 2003.

1

purchase the South Carolina franchise (the "franchise"), promising Hall that the franchise agreement would be structured to allow him to become the franchisee of record if necessary (thereby preserving his legal interests in the franchise). *Id* at ¶¶ 9-14.  Acting on Sullivan's advice, Hall formed Rybek Incorporated ("Rybek") to purchase the franchise and appointed Ryan Beck to operate it on his behalf. *Id.* Hall contends that Sullivan and Mark Devan (a colleague at CBDD), prepared and reviewed the franchise agreement documents, but, *inter alia,* erroneously directed Smoothie King Franchises Incorporated ("Smoothie King") to award the franchise and the valuable Area Development Agreement (which provided exclusive development options) to Ryan Beck, not Rybek. *Id* at ¶¶ 13-16.  Hall acknowledges that he was aware the franchise documents named Beck as the franchisee, but claims he did not realize that his interests had been compromised.  Hall Decl., ¶ 5.  The Hall/Beck franchise opened in Columbia, South Carolina in 1999.  Complaint, ¶ 18.

In early 2001, Sullivan negotiated a termination of Hall's Massachusetts and North Carolina franchises (the "Termination Agreement").  *Id* at ¶ 20.  Under the terms of the Termination Agreement, Hall surrendered his right to sue Smoothie King for any disputes relating to the South Carolina franchise.  *Id.* Hall alleges that he was unaware that the agreement terminated his

2

right to sue and that Sullivan advised him to accept the agreement. *Id.*

In 1999, Sodexho USA ("Sodexho")(the University of South Carolina ("USC")'s food service provider) contracted Rybek to open two Smoothie King franchises on the USC campus. *Id* at ¶ 19. In 2001, however, Sodexho entered into a direct agreement with Smoothie King by which Sodexho, not Rybek, would open the on-campus franchises. Complaint, ¶ 21. Believing that the Smoothie King-Sodexho agreement violated his contract with Sodexho and the exclusive development rights of his franchise, Hall sought to block the agreement. *Id* at ¶ 25. On Hall's behalf, Sullivan sent Sodexho and Smoothie King a series of "cease and desist" letters threatening legal action and sought to negotiate a settlement. *Id.* Hall claims that these letters, sent despite Sullivan's knowledge that Hall could not exercise his rights under the franchise agreement, foreclosed a settlement that would have yielded Hall sizable royalties. *Id* at ¶¶ 30-32.

In 2003, Hall finally learned that he could not obtain control of the franchise without Smoothie King's approval (which was not forthcoming), and, therefore, he lacked standing to contest the Sodexho-Smoothie King agreement. Hall Decl., ¶ 10. Unable to bring suit against Smoothie King or Sodexho, Hall sued the Defendants, alleging legal malpractice and breach of contract for: 1) the flawed drafting of the 1998 franchise documents; 2)

the 2001 Termination Agreement; and 3) the cease and desist letters that prevented Hall from negotiating a settlement with Smoothie King.  Hall seeks $17 million in damages.

Sullivan and D&S have moved for summary judgment on the claims arising out of the drafting of the franchise agreement arguing that: 1) Hall's claims are time barred; and 2) D&S was not formed until 2000.  Devan and CBDD have moved for summary judgment on the grounds that: 1) Hall's claims arising out of the drafting of the franchise documents are time barred; and 2) Sullivan left CBDD in 2000 and, therefore, CBDD and Devan cannot be held liable for damages resulting from the Termination Agreement or the cease and desist letters.

II.  Analysis

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id* at

4

249.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the opposing party must produce evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

Under Rule 56 a party is not entitled to summary judgment if the judgment would not be dispositive of an entire claim.  *See Felix v. Sun Microsystems,* 2004 WL 911303, slip. op. (D.Md. 2004) *and cases cited therein*.


A.  Sullivan's and D&S's Motion for Summary Judgment

Sullivan and D&S have moved for summary judgment on parts of the claims arising out of the drafting of the franchise documents arguing that: 1) they are time barred as to Sullivan; and 2) cannot be applied to D&S because the law firm did not exist at the time the alleged malpractice occurred.  However, as judgment would not be dispositive of either Count I or II of the Complaint, the motion for partial summary judgment will be

denied.

B.  Devan's and CBDD's Motion for Summary Judgment

Devan and CBDD have moved for summary judgment, arguing that: 1) Hall knew that the franchise documents were flawed when he signed them, and, therefore, his claims are time barred; and 2) Sullivan was not working for CBDD when the Termination Agreement was drafted and the cease and desist letters were sent. Accordingly, Devan and CBDD argue that they cannot be held liable for malpractice.

1.  Statute of Limitations

Under Maryland law, a plaintiff must bring a legal malpractice claim "within three years from the date [the action] accrues." Md. Cts. & Jud. Proc. Code Ann. § 5-101; *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A.,* 152 Md.App. 698 (Md. Ct. Spec. App. 2003). Although a cause of action generally accrues at the time the wrong occurs, under the "discovery rule" adopted by Maryland courts, an action is "deemed to accrue on the date when the plaintiff knew or, with due diligence, reasonably should have known of the wrong." *Supik,* 152 Md.App. at 178; *see also Frederick Road Limited Partnership v. Brown & Sturm,* 360 Md. 76, 95-96 (2000). "Before an action is said to have accrued, a plaintiff must have notice of the nature and cause of his

6

injury." *Frederick Road*, 360 Md. at 96.

A corollary to the "discovery rule" is the "continuation of events" theory under which the statute is tolled while a continuous relationship exists between the parties. *Id* at 97. When a relationship built on "trust and confidence" develops between two parties, "the confiding party may rely upon the good faith of the other party so long as the relationship continues to exist." *Supik,* 152 Md.App. at 714.  This theory is particularly applicable to the attorney-client fiduciary relationship because a client "has the right to rely on his or her lawyer's loyalty and to believe the accuracy and candor of the advice they give." *Id.*  However, if the confiding party "knows, or reasonably should know, about a past injury, accrual for statute of limitations purposes will begin on the date of...notice, and not the completion of services." *Id* at 715.

As Sullivan served as Hall's attorney on matters involving the South Carolina franchise from 1998 until 2003,[2] arguably a continuing relationship existed between the two parties. Therefore, whether Hall's claims against Sullivan accrued in 1998 turns on whether Hall knew, or reasonably should have known, of

---

[2] As Hall's attorney, Sullivan: 1) advised Hall in the purchase of the South Carolina franchise; 2) drafted the franchise agreement; 3) represented Hall in a dispute with Ryan Beck in 2002; 4) represented Hall in his dispute with Sodexho and Smoothie King in 2002; and 5) attempted to retain trial counsel for Hall for litigation of the Hall-Sodexho-Smoothie King dispute in 2003.

7

the injury when he signed the franchise documents.

Hall avers that although he had a general understanding of Sullivan's plan, he did not understand how the transaction needed to be structured to allow him to maintain his interest in the franchise. Hall Decl., ¶¶ 3-4. Hall also contends that Sullivan told him that the named franchisee could be either an individual or a corporation. *Id* at ¶ 3. Hall further alleges that he contacted Sullivan before he signed the franchise documents, questioned why Ryan Beck, not Rybek, was named as the franchisee, and was assured by Sullivan that the documents were correct. Hall Dep., p. 179-180. As a result, Hall says he did not know that the franchise documents should have named Rybek, not Ryan Beck as the franchisee of record.

Hall has testified that after the purchase of the franchise, Sullivan continued to assure him that his interests in the franchise were secure. Hall Decl., ¶¶ 4-9. In 2002, when the dispute between Hall, Sodexho and Smoothie King arose, Sullivan continued to insist that Hall was the actual franchisee, attempted to negotiate a settlement, sent cease and desist letters on Hall's behalf, and sought litigation counsel. *Id.* It was not until 2003 that Hall discovered that the error in the franchise documents precluded him from recovering against Sodexho or Smoothie King. Hall Decl., ¶ 10.

It is undisputed that Hall knew Beck was named as the

8

franchisee of record when he signed the franchise documents in 1998.  However, Hall understood that he would not be named as the franchisee in the documents and relied on Sullivan's explicit assurances that the documents were correct.  Also, Sullivan continued to assert, until 2003, that Hall was the actual franchisee and would be able to pursue his claims against Sodexho and Smoothie King.  Although "knowledge of facts...not actual knowledge of their legal significance, starts the statute of limitations running", *Miller v. Pacific Shore Funding*, 224 F.Supp.2d 977 (D.Md. 2002), the nature of the transaction, Hall's lack of legal training and Sullivan's continued assurances all acted to obscure Sullivan's and Devan's alleged malpractice.  As a result, a jury could find that Hall did not know, nor reasonably should have known, of his injury at the time he signed the franchise documents.

Accordingly, Devan's and CBDD's motion for summary judgment will be denied.


<u>March 28, 2006</u>                         <u>       /s/              </u>
Date                                  William D. Quarles, Jr.
                                      United States District Judge